UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BR BRAND HOLDINGS LLC,

                                              CIVIL ACTION NO.: 1:20-cv-10022

                    Plaintiff,

            -against-                   **COMPLAINT**

AMERICAN EXCHANGE TIME LLC,
ALEN MAMROUT,
STEPHEN COHEN, and
STEPHEN VALESQUEZ,

                    Defendants.
------------------------------------------------------------x

Plaintiff BR Brand Holdings LLC, ("Plaintiff") herein asserts its claims as against defendants American Exchange Time LLC ("Defendant American"), Alen Mamrout, Stephen Cohen and Stephen Valesquez and allege as follows:

**Jurisdiction and Venue**

1. This is a civil action arising out of Defendants' violations of Plaintiff's trademark rights in violation of § 43(a)(1)(A) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a)(1)(A); and for unfair competition under the common law of the State of New York.

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for all civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively. In addition, supplemental jurisdiction over related state law claims is conferred upon this Court by 28 U.S.C. §1367(a).

3. Venue is proper in this Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), in that at all relevant times Defendant American transacted business in this district

with the Plaintiff, and all such complained of actions were controlled by the individual defendants. Additionally, the parties contractually agreed any dispute would be heard before a court of competent jurisdiction in New York County, New York.

**Parties**

4.  Plaintiff is a New York limited liability company with its principal place of business in New York, New York.

5.  Defendant American is a business that maintains a headquarters at 1407 Broadway, Suite 2100, New York, New York. Defendant American is an entity that, as it advertises on its website: " . . . partners with prominent men's and ladies' fashion icons, producing watches, jewelry, smart wearables and footwear. Our portfolio is made up of brands we own and licensed partnerships with incredible teams all over the world."

6.  At all relevant times defendant Alen Mamrout was and is the chief executive officer and president of Defendant American and worked and controlled the business decisions of Defendant American from its New York, New York location.

7.  At all relevant times defendant Stephen Cohen was and is the executive vice president of Defendant American and worked and controlled the business decisions of Defendant American from its New York, New York location.

8.  At all relevant times defendant Stephen Valesquez was and is the chief operating officer of Defendant American and worked and controlled the business decisions of Defendant American from its New York, New York location.

9.  Defendants Stephen Cohen, Stephen Valesquez and Alen Mamrout are collectively referred to as "Controlling Defendants". Upon information and belief at all relevant times the Controlling Defendants oversaw daily operations, including business development, strategic

planning, and sales operations of Defendant American and made key decisions about the direction of the company. Upon information and belief, as part of their roles at Defendant American, the Controlling Defendants directly and personally participates and participated in the acts of trademark infringement and unfair competition described herein, with full knowledge that such activity was in violation of Plaintiff's trademark rights.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

**The Business of Plaintiff**

10. Plaintiff is the owner of the trademark Plaintiff is the owner and licensor of the trademark ENGLISH LAUNDRY ("Trademark"), which includes Registration Numbers 4428994, 4738642, 4432697, 3747652 and 4440450 from the United States Patent and Trademark Office.

11. The trademark registrations are for, among other things, use of the Trademark on watches, clothing, carrying bags, cologne and perfume.

12. Plaintiff licenses the use of the Trademark to various third parties, limiting each license to a specific product line in a specific territory for a specific period of time.

13. Licensees of the Trademark, during the course of the license agreements, may utilize the Trademark in the course of manufacturing, distribution and sales in interstate commerce in the United States as well as abroad.

14. Plaintiff takes steps through its license agreements to ensure the quality of the product bearing the Trademark, including approving certain advertising and marketing of products bearing the Trademark.

**The License Agreement with Defendant American**

15.     In or about the winter of 2013, Defendant American began discussions and negotiations with EL Acquisition LLC ("EL Acquisition"), who at the time was the owner of the Trademark, for the purpose of entering into a license agreement to utilize the Trademark on men's watches.

16.     After an arms-length negotiation between sophisticated entities accustomed to negotiating such agreements, as of December 1, 2013, Defendant American and El Acquisition ("The Parties") entered into an initial license agreement ("License Agreement").  The parties thereafter first amended the license agreement on October 1, 2015 ("First Amendment"), thereafter executed the second amendment to License Agreement on January 25, 2016 ("Second Amendment"), thereafter a third amendment to License Agreement was executed as of October 15, 2018, ("Third Amendment").

17.     Each of the amendments set forth above (collectively "Amendments") were voluntarily entered into by Defendant American.

18.     While the Amendments changed the financial obligations of Defendant American, they did not supersede any of the other terms in the License Agreement unless specifically designating as much in each of the Amendments.

**The Trademark and License Agreement are Assigned to Plaintiff**

19.     In October 2019, the Trademark, License Agreement and Amendments were assigned to Plaintiff.

20.     In or about the same time frame, Plaintiff provided notice to Defendant American of the assignment.

21.     The parties to this lawsuit thereafter continued their relationship based upon the License Agreement and Amendments.

**Financial Obligations of Defendant American**

22. Among other things, the License Agreement and Amendments sets forth the terms of the parties' contractual obligations.

23. The initial term of the License Agreement was for three years, broken down into three annual periods, with two separate options to renew, each for an additional three-year period.

24. The renewal terms ("Renewal Terms") in the License Agreement were through April 1, 2023.

25. In consideration for the use of the Trademark, Defendant American agreed to pay Plaintiff Guaranteed Minimum Royalty ("GMR") payments. Paragraph 7 of the License Agreement, referring to Schedule 1 (in addition to the Amendments) (attached to the License Agreement and incorporated therein), sets forth the fee structure of the GMR and the timing of the payments.

26. For the Initial Term, Defendant American was required to pay Plaintiff a GMR of $30,000 for the First Annual Period, in equal quarterly installments on the first day of each Calendar Quarter (January 1, April 1, July 1, and October 1) except that, for the First Annual Period, the GMR shall be paid $5,000 upon execution of the License Agreement, and the remaining $25,000 shall be paid in five (5) equal installments of $5,000 on April 1, 2014, July 1, 2014, October 1, 2014, January 1, 2015 and April 1, 2015.

27. On July 20, 2016, the Second Amendment sets forth the Second and Third Annual Periods, a GMR was to be paid in the amount of $53,750 and $75,000 respectively. In the Second Annual Period, the $53,750 shall be paid in equal quarterly installments of $8,750 on July 1, 2015, October 1, 2015 and January 1, 2016 and $18,750 on April 1, 2016. For the Third Annual Period, the $75,000 shall be paid in equal quarterly installments of $18,750 on July 1, 2016, October 1, 2016, January 1, 2017 and April 1, 2017.

28. For the First Renewal Term, Defendant American was required to pay Plaintiff a GMR of $75,000 for the Fourth and Fifth Annual Periods, in equal quarterly installments of $18,750 on July 1, 2017, October 1, 2017, January 1, 2018 and April 1, 2018 and July 1, 2018, October 1, 2018 January 1, 2019 and April 1, 2019, respectively.

29. In the Third Amendment to the License Agreement, for the Sixth, Seventh and Eighth Annual Periods, the Parties agreed the Second Renewal Term would commence on July 1, 2019 and extend through June 30, 2022. For the following 3 annual periods, Defendant American was to pay $75,000 annually in equal quarterly amounts of $18,750 due on July 1, October 1, January 1, and April 1 of each applicable year.

**Defendant American Defaults on the License Agreement**

30. In the event Defendant American defaulted on the GMR payments, paragraph 14 of the License Agreement provided Plaintiff, as the licensor, may terminate the respective License Agreement on seven (7) days written notice if Defendant American fails to timely make payment of the GMR and fails to cure the default.

31. Paragraph 15 of the License Agreement contains an acceleration clause, as it thereafter states that within ten days after the termination of the License Agreement, Defendant American shall pay to Plaintiff the GMR remaining for the balance of the term of the License Agreement.

32. Also included in paragraph 15 is a requirement, in the event of a termination of the License Agreement, Defendant American shall deliver within thirty days after termination to licensor a complete and accurate schedule of Defendant American's inventory of articles of clothing bearing the Trademarks and of related work in process (collectively defined as "Inventory"). Pursuant to the License Agreement Plaintiff shall have the option to purchase first quality condition Inventory, with a requirement of Defendant American to deliver, at no cost, the remaining Inventory.

33. Defendant American made all GMR payments as required for the Fifth and Sixth Annual Periods.

34. Defendant American breached its obligation to Plaintiff by failing to pay the Plaintiff the April 1, 2020, quarterly payment as required pursuant to License Agreement within the Third Amendment.

35. Failure of Defendant American to make the payment was and is a material breach of the License Agreement and triggered the acceleration clause in the underlying License Agreement requiring payment of all GMR in the Second Renewal Term, or $168,750.

36. On June 11, 2020, Defendant American was sent a notice of default ("Default Letter") from Plaintiff. Pursuant to the letter and terms of the License Agreement, Defendant American was notified it had until June 18, 2020, ten days after the default notice, to remit payment or the License Agreement will be deemed terminated as of June 18, 2020 ("Termination Letter").

37. Defendant American failed to comply with the default notice letter.

38. Pursuant to the terms of the License Agreement, the failure to pay the GMR and failure to cure acts as a materials breach of the License Agreement, and pursuant to the mutually agreed upon terms, the full amount of the GMR due under for the remainder of the term of License Agreement and Amendments would be accelerated and due upon demand.

39. Pursuant to the acceleration clause contained the License Agreement, within ten days after termination Defendant American is required to pay the remaining balance due under the License Agreement and Renewal Terms, or $168,750.

40. Pursuant to the terms of the License Agreement, upon termination Defendant American has certain responsibilities, including but not limited to, providing an inventory of remaining

product bearing the Trademark and to cease and desist selling any inventory bearing such Trademark.

41. Defendant American has failed to comply with such contractual obligations.

**Defendant American Sold Goods After the Termination Date**

42. On July 28, 2020, Defendant American received the termination letter from Plaintiff. Subsequent to receiving the termination letter on July 28, 2020, Defendant American continued to sell products bearing the Trademark and place them in the stream of interstate commerce.

43. Defendant American has not paid any royalty to Plaintiff from its post-termination sales.

44. Notwithstanding the termination of the license, Defendant American continued then, and continues as of the day of this filing, to advertise to the general public on its website it is a license partner of Plaintiff.

45. The following is a portion of the website advertising the relationship with English Laundry:

/
/
/
/
/
/
/
/
/
/[intentionally blank]



46. The following is also included on its website:



9

   https://www.axnygroup.com/our-drive

47. As of November 23, 2020, Defendant American is still advertising its sale of products bearing the Trademark, found on its website https://www.axnygroup.com/watches.

48. At the time of termination Plaintiff was precluded from acting in any capacity as a licensee of Plaintiff.

49. Notwithstanding, subsequent to the termination Defendant American continued to advertise and sell product bearing the Trademark.

50. More specifically, in the fall of 2020, Defendant American provided to Plaintiff a royalty report identifying to Plaintiff it sold approximately $170,000 worth of product bearing the Trademark from July through September 2020.

51. All such sales after July 28, 2020, were effectuated without the right to sell such products and were done without any permission by Plaintiff to sell such products.

52. Such sales to the public and any third party would indicate to any consumer purchasing the product that Defendant American was still a licensee of the Plaintiff and that Defendant American was selling properly licensed merchandise.

53. This process creates a confusion to the consumer as to the origination of the product bearing the Trademarks.

54. These sales effectuated acts of unfair competition by permitted Defendant American the benefit of receiving sales for business it was not entitled to effectuate.

**The Controlling Principals Directed the Transactions At Issue**

55. At all relevant times the Controlling Defendants were the driving force and decision makers who received the notice of termination on July 28, 2020, or had full knowledge of the termination

and thereafter made the decision to continue to sell the open inventory of product bearing the Trademark after the termination date without concern of Plaintiff's intellectual property rights.

56. Subsequent to the termination of the License Agreement, Defendants' commercial activities, in interstate commerce, involving the advertising and sale of goods bearing the Trademark were done in an effort to mislead the public providing it with the false impression Plaintiff endorsed, sponsored, authorized, or approved such use and sale of products bearing the Trademark, when Plaintiff in fact did the contrary by way of its termination of the License Agreement.

57. Subsequent to the termination of the License Agreement, after selling approximately $170,000 worth of product bearing the Trademark, the Controlling Defendants, in directing such activities, upon information and belief made the decision Plaintiff was not to be paid the required royalty payment or the guaranteed minimum royalty payment.

**Plaintiff Has Retained Counsel to Enforce the License Agreement and Protect Its Intellectual Property**

58. Pursuant to the terms of the License Agreement, Defendant American is contractually obligated to pay Plaintiff's legal fees associated with the enforcement of the License Agreement and Amendments.

59. Defendant American's failure to comply with the terms of the License Agreement and Amendments, and further ignored Plaintiff's intellectual property rights, common law rights and contractual rights, has forced Plaintiff to retain counsel and incur legal fees.

## AS AND FOR A FIRST CLAIM FOR RELIEF
(Lanham Act Claims - As Against All Defendants)

60. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

61. Defendants' conduct of selling and advertising product bearing Plaintiff's Trademark after the termination letter constitutes infringement, unfair competition and the use of false designations of origin and false descriptions and representations in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), with respect to the Trademark.

62. By reason of the foregoing conduct, Defendants are liable to Plaintiff, pursuant to 15 U.S.C. § 1116, for damages in an amount to be determined at trial, in addition to the costs of this action.

63. Moreover, because Defendants willfully intended to trade upon Plaintiff's Trademark, in contravention of Plaintiff's rights, Plaintiff is entitled to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action pursuant to 15 U.S.C. § 1117(a), including, without limitation, treble damages and attorneys' fees.

64. Plaintiff is further entitled to a preliminary and permanent injunction enjoining Defendants and its agents, employees, subsidiaries, parents or affiliates from continuing to manufacture, cause to be manufactured, promote or sell any products which contain Plaintiff's Trademark.

## AS AND FOR A SECOND CLAIM FOR RELIEF
**(Unfair Competition - As Against All Defendants)**

65. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

66. Defendants' conduct constitutes unfair competition by passing off, misappropriation and unprivileged imitation under common law.

67. Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Unjust Enrichment - As to Defendant American)

68. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

69. Defendant American has used Trademark notwithstanding the revocation of consent therefor and without providing Plaintiff with any compensation therefor.

70. Defendant American has derived substantial benefits from its wrongful exploitation of Plaintiff's Trademark and has thereby been unjustly enriched, to Plaintiff's detriment, in an amount to be proven at trial. It would be unfair and/or inequitable to allow Defendant American to retain the benefits of its wrongful conduct.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Breach of Contract - As Defendant American)

71. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

72. Defendant American is a sophisticated business, who negotiated the License Agreement in an arm's length business transaction with sophisticated businessmen.

73. EL Acquisition and Plaintiff performed all necessary acts, duties and responsibilities under the terms of the License Agreement.

74. It was agreed by and among the parties that in consideration for the payment of GMR payments, Plaintiff would permit Defendant American to act as a licensee of EL Acquisition and now Plaintiff.

75. Defendant American did enter into the License Agreement and did utilize the Trademark on products.

76. As a result of the License Agreement, upon information and belief, Defendant American did sell the articles in the territory.

77. Pursuant to the License Agreement and Amendments, Defendant American was required to make certain GMR payments based upon an agreed upon schedule.

78. Defendant American breached the License Agreement and Amendments by failing to comply with the payment terms of the GMRs, specifically the payment due on April 1, 2020.

79. As a result of the failure to fully cure the breach and default, notice was properly sent terminating the License Agreement and demanding the accelerated payment to Plaintiff for $168,750.

80. Defendant American breached the terms of the License Agreement and Amendments by failing to pay the accelerated amounts due thereunder.

81. Defendant American has not cured its default.

82. Defendant American further breached the License Agreement by selling product after the License Agreement was Terminated.

83. Defendant American has further breached the License Agreement by failing to pay all royalty payments as required in the License Agreement.

84. Defendant American's acts and omissions caused a loss of business for Plaintiff.

85. Defendant American is liable to Plaintiff in the amount to be determined at trial, including, but not limited to, together with interest and attorneys' fees associated with the collection of monies due therefrom.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Specific Performance - As Defendant American)

86. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

87. Pursuant to paragraph 15 of the License Agreement, upon termination of the agreement, Defendant American is required to deliver to Plaintiff a complete and accurate schedule of its Inventory and deliver the same to Plaintiff and identify where the Inventory is warehoused.

88. In addition, pursuant to paragraph 15 of the License Agreement, Defendant American is required to deliver to Plaintiff all second quality conditioned apparel as well as provide Defendant American the right to purchase any first quality conditioned apparel remaining in the inventory.

89. Pursuant to paragraph 15 of the License Agreement, Defendant American, within 30 days of any termination, is required to deliver, free of charge, all materials used for the manufacture, distribution or sale of clothing or advertising, marketing and promotion, including all sample clothing, sketches and designs, manufacturing specifications, labels, tags and materials with the licensed mark.  The License Agreement precludes Defendant American from utilizing the Trademark in any manner after termination.

90. Plaintiff will be damaged if Defendant American has in its possession any goods or information relating to Plaintiff's Trademark and should be ordered to specifically perform the acts set forth paragraph 15 of the License Agreements.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Attorneys' Fees - As to All Defendants)

91. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

92. Pursuant to the License Agreement, to the extent of any finding of a breach of the License Agreement, Defendant American agreed to pay for attorneys' fees and costs in connection with the enforcement of the License Agreement.

93. Due to the breach of the License Agreement, Plaintiff has been forced to retain counsel and incur costs that include, but are not limited to, filing fees and attorneys' fees.

94. Due to the breach, Plaintiff are entitled to an award of attorneys' fees and costs associated with Plaintiff's enforcement of the License Agreement.

95. Plaintiff is also entitled to attorneys' fees against all Defendants based upon the Lanham Act.

### AS AND FOR AN SEVENTH CLAIM FOR RELIEF
**(Injunctive Relief - As to All Defendants)**

96. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

97. Defendants' conduct, as alleged herein, threatens to impair and dilute the value of Plaintiff's Trademark. Monetary damages alone will not suffice to remedy the damage that has been and will be done to Plaintiff because, unless restrained, Defendants may well continue to engage in such conduct in the future and further impair and dilute the value of Plaintiff's Trademark.

98. By reason of the foregoing conduct, Plaintiff is entitled to injunctive relief, barring Defendants, and those under its control, from continuing to use and otherwise exploit Plaintiff's Trademark without its prior permission and consent.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

i. Adjudging Defendants, jointly and severally, to be in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and awarding all available statutory damages to Plaintiff for such violations;

ii. Awarding Plaintiff damages as against Defendants, jointly and severally, pursuant to 15 U.S.C. § 1116 in an amount to be proven at trial, with statutory interest;

iii. Awarding Plaintiff treble and/or exemplary damages and attorneys' fees against Defendants, jointly and severally, pursuant to law including, without limitation, 15 U.S.C. § 1117;

iv. Adjudging Defendant American to have unfairly competed with Plaintiff, and awarding damages in an amount to be proven at trial, with interest;

v. Adjudging Defendant American to have been unjustly enriched by its actions and omissions, and awarding damages in an amount to be proven at trial, with interest;

vi. Adjudging Defendant American to be in breach of the License Agreement and Amendments, and awarding Plaintiff damages in an amount to be proven at trial, with statutory interest;

vii. Preliminarily and permanently enjoining Defendants, and those acting under their control or direction from continuing to violate the aforesaid statutes and otherwise infringing Plaintiff's statutory and common law rights;

viii. Awarding Plaintiff its costs and reasonable attorneys' fees incurred in connection with the prosecution of this action; and

ix. For such other relief as the Court may deem just and proper.

Dated: November 30, 2020

                              Respectfully submitted,

                    **THE LAW OFFICES OF BARRY M. BORDETSKY**

                  By:    /s/Barry M. Bordetsky
                         Barry M. Bordetsky
                         Counsel for Plaintiff
                         570 Lexington Avenue, 24th Floor
                         New York, New York 10022
                         Tel. No. 212-688-0008
                         Email: barry@bordetskylaw.com

## *DEMAND FOR JURY*

Pursuant to Fed. R.Civ.P. 38(b), Plaintiff hereby demands a jury trial on all issues triable by a jury.