UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BR BRAND HOLDINGS LLC,<br><br>Plaintiff – Counterclaim Defendant,<br><br>-against-<br><br>AMERICAN EXCHANGE TIME LLC,<br>ALEN MAMROUT,<br>STEPHEN COHEN, and<br>STEPHEN VALESQUEZ<br><br>Counterclaim Plaintiff - Defendants. | Civil Action No.: 1:20-cv-10022<br><br>**ANSWER WITH COUNTERCLAIMS** |

Defendants, AMERICAN EXCHANGE TIME LLC, ALEN MAMROUT, STEPHEN COHEN, and STEPHEN VALESQUEZ ("Defendants" or, together "American Exchange"), by and through its counsel, Garson, Ségal, Steinmetz, Fladgate LLP, as and for its Answer to Plaintiff, BR BRAND HOLDINGS LLC ("Plaintiff" or "BR Brand") Complaint, filed November 30, 2020 (the Complaint), hereby respectfully submits as follows:

## Jurisdiction and Venue

1. Paragraph "1" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny as Defendants had a license for the Plaintiff's trademark in question and insofar as the same purports to provide a basis for a finding of liability as against Defendants.

2. Paragraph "2" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny as the they had a valid license and insofar as the same purports to provide a basis for a finding of liability as against Defendants.

3. Paragraph "3" of the Complaint contains a legal conclusion for which no response is required.

**The Parties to this Action**

4. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "4" of the Complaint.

5. Defendants admits the facts set forth in Paragraph "5" of the Complaint.

6. Defendants deny the facts set forth in Paragraph "6" of the Complaint.

7. Defendants deny the facts set forth in Paragraph "7" of the Complaint.

8. Defendants deny the facts set forth in Paragraph "8" of the Complaint.

**9.** Defendants deny the facts set forth in Paragraph "9" of the Complaint.

**Statement of Facts**

10. Defendants admits that Plaintiff is the owner of the trademark set forth in paragraph "10" of the Complaint.

11. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "11" of the Complaint.

12. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "12" of the Complaint.

13. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "13" of the Complaint.

14. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "14" of the Complaint.

15. Defendants admits the timeline and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "15" of the Complaint, and on that basis deny the same.

16. Defendants admits that Defendants entered into a License Agreement and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "16" of the Complaint, and on that basis deny the same.

17. Defendants admits that deny the facts set forth in paragraph "17" of the Complaint.

18. Defendants admits and agrees to the terms of the Agreements and Amendments and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "18" of the Complaint, and on that basis deny the same.

19. Defendants lack knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "19" of the Complaint, and on that basis deny the same.

20. Defendants admits to the assignment and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "20" of the Complaint, and on that basis deny the same.

21. Defendants admits to continuing a relationship with Plaintiff concerning the License Agreement and Amendments and otherwise deny knowledge and/or information

sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "21" of the Complaint, and on that basis deny the same.

22. Defendants admits that the License Agreement set forth contractual terms between the Parties and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "22" of the Complaint, and on that basis deny the same.

23. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "23" of the Complaint are not consistent with its actual content, such allegations are denied.

24. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "24" of the Complaint are not consistent with its actual content, such allegations are denied.

25. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "24" of the Complaint are not consistent with its actual content, such allegations are denied.

26. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "26" of the Complaint are not consistent with its actual content, such allegations are denied.

27. The Second Amendment is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "27" of the Complaint are not consistent with its actual content, such allegations are denied.

28. The GMR Schedule is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "28" of the Complaint are not consistent with its actual content, such allegations are denied.

29. The Third Amendment is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "29" of the Complaint are not consistent with its actual content, such allegations are denied.

30. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "30" of the Complaint are not consistent with its actual content, such allegations are denied.

31. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "31" of the Complaint are not consistent with its actual content, such allegations are denied.

32. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content

of this document in paragraph “32” of the Complaint are not consistent with its actual content, such allegations are denied.

33. Defendants admits that they paid all GMR payments as set forth in paragraph “33” of the Complaint.

34. Defendants deny each and every allegation set forth in paragraph “34” of the Complaint.

35. Defendants deny each and every allegation set forth in paragraph “35” of the Complaint.

36. Defendants admits that they were sent a notice of default on June 11, 2020 but otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph “36” of the Complaint, and on the basis deny the same.

37. Defendants deny each and every allegation set forth in paragraph “37” of the Complaint.

38. Defendants deny each and every allegation set forth in paragraph “38” of the Complaint.

39. Defendants deny each and every allegation set forth in paragraph “39” of the Complaint.

40. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “40” of the Complaint are not consistent with its actual content, such allegations are denied and Defendants deny each and every allegation set forth in paragraph “40” of the Complaint that such terms apply.

41. Defendants deny each and every allegation set forth in paragraph "41" of the Complaint.

42. Defendants admits that they received Plaintiff's July 28, 2020 letter but deny each and every allegation otherwise contained in paragraph "42" of the Complaint.

43. Defendants deny each and every allegation set forth in paragraph "43" of the Complaint.

44. Defendants deny each and every allegation set forth in paragraph "44" of the Complaint.

45. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "45" of the Complaint are not consistent with its actual content, such allegations are denied.

46. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "46" of the Complaint are not consistent with its actual content, such allegations are denied.

47. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "47" of the Complaint are not consistent with its actual content, such allegations are denied.

48. Defendants deny each and every allegation set forth in paragraph "48" of the Complaint.

49. Defendants deny each and every allegation set forth in paragraph "49" of the Complaint.

50. Defendants admit they provided Plaintiff with a royalty report, but otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "50" of the Complaint, and on the basis deny the same.

51. Defendants deny each and every allegation of fact set forth in paragraph "51" of the Complaint.

52. Defendants deny each and every allegation of fact set forth in paragraph "52" of the Complaint.

53. Defendants deny each and every allegation of fact set forth in paragraph "53" of the Complaint.

54. Defendants deny each and every allegation of fact set forth in paragraph "54" of the Complaint.

55. Defendants deny each and every allegation of fact set forth in paragraph "55" of the Complaint.

56. Defendants deny each and every allegation of fact set forth in paragraph "56" of the Complaint.

57. Defendants deny each and every allegation of fact set forth in paragraph "57" of the Complaint.

58. Defendants deny each and every allegation of fact set forth in paragraph "58" of the Complaint.

59. Defendants deny each and every allegation of fact set forth in paragraph “59” of the Complaint.

60. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

61. Paragraph “61” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

62. Paragraph “62” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

63. Paragraph “63” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

64. Paragraph “64” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

65. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

66. Paragraph “66” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

67. Defendants deny each and every allegation of fact set forth in paragraph “67” of the Complaint.

68. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

69. Defendants deny each and every allegation of fact set forth in paragraph “69” of the Complaint.

70. Defendants deny each and every allegation of fact set forth in paragraph “70” of the Complaint.

71. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

72. Defendants deny each and every allegation of fact set forth in paragraph “72” of the Complaint.

73. Defendants deny each and every allegation of fact set forth in paragraph “73” of the Complaint.

74. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “74” of the Complaint are not consistent with its actual content, such allegations are denied.

75. Defendants admits the fact set forth in paragraph “75” of the Complaint.

76. Defendants deny each and every allegation set forth in paragraph “76” of the Complaint.

77. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "77" of the Complaint are not consistent with its actual content, such allegations are denied.

78. Defendants deny each and every allegation set forth in paragraph "78" of the Complaint.

79. Defendants deny each and every allegation set forth in paragraph "79" of the Complaint.

80. Defendants deny each and every allegation set forth in paragraph "80" of the Complaint.

81. Defendants deny each and every allegation set forth in paragraph "81" of the Complaint.

82. Defendants deny each and every allegation set forth in paragraph "82" of the Complaint.

83. Defendants deny each and every allegation set forth in paragraph "83" of the Complaint.

84. Defendants deny each and every allegation set forth in paragraph "84" of the Complaint.

85. Defendants deny each and every allegation set forth in paragraph "85" of the Complaint.

86. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

87. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "87" of the Complaint are not consistent with its actual content, such allegations are denied.

88. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "88" of the Complaint are not consistent with its actual content, such allegations are denied.

89. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "89" of the Complaint are not consistent with its actual content, such allegations are denied.

90. Defendants deny each and every allegation set forth in paragraph "90" of the Complaint.

91. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

92. Paragraph "92" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

93. Defendants deny each and every allegation set forth in paragraph "93" of the Complaint.

94. Defendants deny each and every allegation set forth in paragraph “94” of the Complaint.

95. Paragraph “95” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

96. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

97. Defendants deny each and every allegation set forth in paragraph “97” of the Complaint.

98. Paragraph “98” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants

**Response to Prayer for Relief**

**WHEREFORE**, Defendants deny that Plaintiff is entitled to any of the relief set forth or sought in Plaintiff’s prayer for relief, whatsoever.

**AFFIRMATIVE DEFENSES**

Further answering the Complaint, Defendants pleads the following affirmative defenses:

FIRST AFFIRMATIVE DEFENSE

A. The Complaint fails to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

B. Plaintiff’s claims are barred, in whole or in part, by the doctrine of waiver.

THIRD AFFIRMATIVE DEFENSE

C. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

FOURTH AFFIRMATIVE DEFENSE

D. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

FIFTH AFFIRMATIVE DEFENSE

E. Plaintiff's claims are barred, in whole or in part, by the doctrine of impossibility.

SIXTH AFFIRMATIVE DEFENSE

F. Plaintiff's claims are barred, in whole or in part, by the doctrine of force majeure.

SEVENTH AFFIRMATIVE DEFENSE

G. Plaintiff's claims are barred, in whole or in part, by the doctrine of frustration of purpose.

**Counterclaim-Plaintiff's Counterclaims**

**Counterstatement of Facts**

1. In 2013, Counter-Plaintiff American Exchange Time LLC ("Counter-Plaintiff") entered into a License Agreement with EL Acquisition LLC, which upon information and belief was then assigned to Counter-Defendant BR Brand Holdings, LLC ("Counter-Defendant") in October 2019, the validity of which is not known.

2. As set forth in the License Agreement, in consideration for being able to sell products into certain Channels of Distribution, Counter-Plaintiff was to pay Counter-Defendant a structured Guaranteed Minimum Royalty Payment ("GMR") based upon the sales made by Counter-Plaintiff in an open market.

3. In the ordinary course of business, Counter-Plaintiff was current in their account, having paid the GMR due and owing to Counter-Defendant, in full.

4. In March 2020, the COVID-19 pandemic reached the United States, after impacting Europe and Asia since January 2020.

5. The COVID-19 pandemic crippled the sales market, both nationwide and worldwide and in particular physical retail stores, the subject of the Channels of Distribution, were adversely impacted, resulting in an evisceration of the market.

6. The License Agreement presumes a Licensee's ability to sell into the bargained-for Territory and Channels of Distribution.

7. From March 2020, as many retails stores in the Unites States were precluded from opening, the bargained for Channels of Distribution no longer existed, rendering in person sales impossible.

8. From March 2020, as many retails stores in the Unites States were precluded from opening, the purpose of the License Agreement was frustrated.

9. On March 09, 2020, as the pandemic was settling in, Counter-Plaintiff received an invoice for due payment from Counter-Defendant.

10. On March 24, 2020, while the COVID-19 pandemic was at its initial height, the Channels of Distribution were closed and the nation was under lockdown, Counter-Defendant alerted Counter-Plaintiff that the deadline for payment was approaching.

11. Counter-Defendant continued to harass the Counter-Plaintiff in the midst of a national crisis regarding unrealistic demands for payment of the Guaranteed Minimum Royalties.

12. Like many businesses afflicted by the crisis, Counter-Plaintiff sought to find a business solution as tried to keep their business frm collapsing as they were hindered in selling any products.

13. On May 7, 2020, American Exchange responded to BR Brands, confirming that Counter-Plaintiff gave notice under the License Agreement that due to the COVID-19 shutdown, all business partners of Counter-Plaintiff were being notified of a 90-day delay in royalty payments and, payments on the March 9, 2020 invoice should be delivered to Counter-Defendant in in July 2020.

14. Counter-Defendant, giving no deference to the situation and pandemic and its implied covenant of good faith and fair dealing, demanded payment of Ten Thousand Dollars ($10,000) by Monday May 11, 2020 on the Eighteen Thousand Seven Hundred Fifty Dollar ($18,750) March 9, 2020 invoice.

15. Stunned at Counter-Defendants response, Counter-Plaintiff sought to have a phone call between the Parties.

16. On May 15, 2020 the Parties had a call as to the GMR payments, where Counter-Defendant, misunderstanding the extent and nature of the pandemic, offered Counter-Plaintiff to pay half the amount of the March 9, 2020 invoice upfront and the remaining half a month later.

17. With the pandemic amplifying and Channels of Distribution still closed, Counter-Plaintiff, after an in-depth review its finances determined that based on sales data they would be unable to complete the half upfront, half deferred payment demanded by Counter-Defendant.

18. Seeking in good faith to perform, Counter-Plaintiff on May 21 2020 offered the following proposal: (1) a partial payment of $9,375 (half of Q2 royalties, immediately; (2) the remainder of the Q2 royalties (S9,375) paid June 30; (3) Q3 royalty payment abated; (4) Q4 royalty payment paid in full on December 31, 2020 and; (5) the Minimum Guaranteed Royalty lowered from

$75,000 to earned royalties on sales only for 2021, due to the pandemic astronomically impacting sales.

19. In good faith, the Counter-Plaintiff made clear that while this was not its intention, the only other foreseeable option would be to terminate the License in full and work together with the Counter-Defendant to wind down by the end of the year.

20. Counter-Defendant immediately rejected Counter-Plaintiff's proposal without any consideration to the collapse of the Channels of Distribution offered the following in rebuttal: (1) Split the March 9, 2020 invoice in half with half paid now and half paid on June 30, 2021; (2) delay the Q1 payment of $18,750 to July 1, 2020 and every further payment would remain the same for the Term of the License Agreement.

21. On June 11, 2020, again in the midst of a national crisis, Counter-Defendant sent Default Notice to Counter-Plaintiff.

22. In each and every contract exists an implied covenant of duty of good faith and fair dealing.

23. The Counter-Plaintiff by demanding monies that they knew or should have known was untenable given the collapse of the Channels of Distribution, was outside of any good faith.

24. The GMR payments included in the license were based on a presumption of a normally operating market or the availability of the Channels of Distribution.

25. The market during the pandemic evaporated and it was impossible for Counter-Plaintiff to sell their goods in order to the meet and achieve any minimum guarantees to reach the GMR payment.

26. To fail to consider the doctrine of impossibility, frustration of purpose or force majeure in such circumstances and instead no bring a claim of breach of contract and trademark infringement rises to the level of bad faith on the Counter-Defendant.

27. As such, Counter-Defendant's failure to abide by its covenant of good faith and fair dealing implied in the License Agreement, has forced Counter-Plaintiff to be damaged and to defend themselves.

**COUNT I – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

1. Counterclaim Plaintiff re-alleges the paragraphs above as if fully set forth herein.
2. Counterclaim Plaintiff contracted with Counterclaim Defendant to use the Licensed Mark in connection with products for distribution only to the expressly specified retailers within the Channels of Distribution set forth on Schedule l to the License Agreement.
3. The Guaranteed Minimum Royalty and Minimum Net Sales were negotiated and agreed on the basis of regular, unhindered market forces.
4. This License Agreement was subject to an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenant that Counterclaim-Defendant would act fairly and in good faith in the event that the contracted for Channels of Distribution were impaired.
5. Counterclaim-Defendant breached the implied covenant of good faith and fair dealing by:

i) Refusing to recognize the force majeure circumstances brought on by the COVID-19 pandemic;

ii) Refusing to recognize that the Channels of Distribution were significantly impaired by the COVID-19 pandemic;

iii) Enforcing the Minimum Net Sales despite the impossibility brought on by the COVID-19 pandemic;

iv) Enforcing the Minimum Net Sales despite the frustration of purpose caused by the COVID-19 pandemic;

v) Enforcing the Guaranteed Minimum Royalty despite the impossibility brought on by the COVID-19 pandemic;

vi) Enforcing the Guaranteed Minimum Royalty despite the frustration of purpose caused by the COVID-19 pandemic;

vii) Cancellation of the License Agreement; or

viii) Bringing the Complaint, in bad faith.

6. Counterclaim-Plaintiff met all or substantially all of its contractual obligations up until rendered unable to by circumstances beyond its control.

7. Counterclaim-Defendant's failure to act in good faith in demanding Guaranteed Minimum Royalty payments from Channels of Distribution that were severely impaired by the COVID 19 pandemic denied Plaintiff the full benefit of its bargain.

8. Accordingly, Plaintiff has been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and is entitled to damages in an amount to be proven at trial.

WHEREFORE, Defendants prays for Judgment as follows:

a. dismissing the Complaint in its entirety, as against Defendants, with prejudice;

b. awarding Defendants its costs, expenses, and reasonable attorneys' fees, including as prevailing parties under 17 U.S.C. § 505; and

c. granting Defendants such other and further relief at this Court deems just and proper.

**DATED:** NEW YORK, NEW YORK
JANUARY 29, 2021

RESPECTFULLY SUBMITTED,

**GARSON, SEGAL,**
**STEINMETZ, FLADGATE LLP**

**BY:** ***/S/* ROBERT GARSON**

ROBERT GARSON
MORGAN ROMAGNA
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
**TELEPHONE:** (212) 380-3623
**FACSIMILE:** (347) 537-4540
**EMAIL:** RG@gs2law.com
MDR@gs2law.com

*ATTORNEYS FOR DEFENDANTS*