UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BR BRAND HOLDINGS LLC,<br><br>Plaintiff – Counterclaim Defendant,<br><br>-against-<br><br>AMERICAN EXCHANGE TIME LLC,<br>ALEN MAMROUT,<br>STEPHEN COHEN, and<br>STEPHEN VALESQUEZ<br><br>Counterclaim Plaintiff - Defendants. | Civil Action No.: 1:20-cv-10022<br><br>**AMENDED ANSWER WITH**<br><br>**COUNTERCLAIMS** |

Defendants, AMERICAN EXCHANGE TIME LLC, ALEN MAMROUT, STEPHEN COHEN, and STEPHEN VALESQUEZ ("Defendants" or, together "American Exchange"), by and through its counsel, Garson, Ségal, Steinmetz, Fladgate LLP, as and for its Answer to Plaintiff, BR BRAND HOLDINGS LLC ("Plaintiff" or "BR Brand") Complaint, filed November 30, 2020 (the Complaint), hereby respectfully submits as follows:

## Jurisdiction and Venue

1. Paragraph "1" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny as Defendants had a license for the Plaintiff's trademark in question and insofar as the same purports to provide a basis for a finding of liability as against Defendants.

2. Paragraph "2" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny as the they had a valid license and insofar as the same purports to provide a basis for a finding of liability as against Defendants.

3. Paragraph "3" of the Complaint contains a legal conclusion for which no response is required.

**The Parties to this Action**

4. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "4" of the Complaint.

5. Defendants admits the facts set forth in Paragraph "5" of the Complaint.

6. Defendants deny the facts set forth in Paragraph "6" of the Complaint.

7. Defendants deny the facts set forth in Paragraph "7" of the Complaint.

8. Defendants deny the facts set forth in Paragraph "8" of the Complaint.

**9.** Defendants deny the facts set forth in Paragraph "9" of the Complaint.

**Statement of Facts**

10. Defendants admits that Plaintiff is the owner of the trademark set forth in paragraph "10" of the Complaint.

11. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "11" of the Complaint.

12. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "12" of the Complaint.

13. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "13" of the Complaint.

14. Defendants lacks knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "14" of the Complaint.

15. Defendants admits the timeline and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "15" of the Complaint, and on that basis deny the same.

16. Defendants admits that Defendants entered into a License Agreement and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "16" of the Complaint, and on that basis deny the same.

17. Defendants admits that deny the facts set forth in paragraph "17" of the Complaint.

18. Defendants admits and agrees to the terms of the Agreements and Amendments and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "18" of the Complaint, and on that basis deny the same.

19. Defendants lack knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "19" of the Complaint, and on that basis deny the same.

20. Defendants admits to the assignment and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "20" of the Complaint, and on that basis deny the same.

21. Defendants admits to continuing a relationship with Plaintiff concerning the License Agreement and Amendments and otherwise deny knowledge and/or information

sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "21" of the Complaint, and on that basis deny the same.

22. Defendants admits that the License Agreement set forth contractual terms between the Parties and otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "22" of the Complaint, and on that basis deny the same.

23. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "23" of the Complaint are not consistent with its actual content, such allegations are denied.

24. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "24" of the Complaint are not consistent with its actual content, such allegations are denied.

25. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "24" of the Complaint are not consistent with its actual content, such allegations are denied.

26. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "26" of the Complaint are not consistent with its actual content, such allegations are denied.

27. The Second Amendment is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “27” of the Complaint are not consistent with its actual content, such allegations are denied.

28. The GMR Schedule is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “28” of the Complaint are not consistent with its actual content, such allegations are denied.

29. The Third Amendment is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “29” of the Complaint are not consistent with its actual content, such allegations are denied.

30. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “30” of the Complaint are not consistent with its actual content, such allegations are denied.

31. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “31” of the Complaint are not consistent with its actual content, such allegations are denied.

32. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content

of this document in paragraph “32” of the Complaint are not consistent with its actual content, such allegations are denied.

33. Defendants admits that they paid all GMR payments as set forth in paragraph “33” of the Complaint.

34. Defendants deny each and every allegation set forth in paragraph “34” of the Complaint.

35. Defendants deny each and every allegation set forth in paragraph “35” of the Complaint.

36. Defendants admits that they were sent a notice of default on June 11, 2020 but otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph “36” of the Complaint, and on the basis deny the same.

37. Defendants deny each and every allegation set forth in paragraph “37” of the Complaint.

38. Defendants deny each and every allegation set forth in paragraph “38” of the Complaint.

39. Defendants deny each and every allegation set forth in paragraph “39” of the Complaint.

40. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “40” of the Complaint are not consistent with its actual content, such allegations are denied and Defendants deny each and every allegation set forth in paragraph “40” of the Complaint that such terms apply.

41. Defendants deny each and every allegation set forth in paragraph "41" of the Complaint.

42. Defendants admits that they received Plaintiff's July 28, 2020 letter but deny each and every allegation otherwise contained in paragraph "42" of the Complaint.

43. Defendants deny each and every allegation set forth in paragraph "43" of the Complaint.

44. Defendants deny each and every allegation set forth in paragraph "44" of the Complaint.

45. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "45" of the Complaint are not consistent with its actual content, such allegations are denied.

46. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "46" of the Complaint are not consistent with its actual content, such allegations are denied.

47. The website of the Defendants speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "47" of the Complaint are not consistent with its actual content, such allegations are denied.

48. Defendants deny each and every allegation set forth in paragraph "48" of the Complaint.

49. Defendants deny each and every allegation set forth in paragraph "49" of the Complaint.

50. Defendants admit they provided Plaintiff with a royalty report, but otherwise deny knowledge and/or information sufficient to form a belief as to the truth or falsity of those matters set forth in paragraph "50" of the Complaint, and on the basis deny the same.

51. Defendants deny each and every allegation of fact set forth in paragraph "51" of the Complaint.

52. Defendants deny each and every allegation of fact set forth in paragraph "52" of the Complaint.

53. Defendants deny each and every allegation of fact set forth in paragraph "53" of the Complaint.

54. Defendants deny each and every allegation of fact set forth in paragraph "54" of the Complaint.

55. Defendants deny each and every allegation of fact set forth in paragraph "55" of the Complaint.

56. Defendants deny each and every allegation of fact set forth in paragraph "56" of the Complaint.

57. Defendants deny each and every allegation of fact set forth in paragraph "57" of the Complaint.

58. Defendants deny each and every allegation of fact set forth in paragraph "58" of the Complaint.

59. Defendants deny each and every allegation of fact set forth in paragraph "59" of the Complaint.

60. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

61. Paragraph "61" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

62. Paragraph "62" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

63. Paragraph "63" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

64. Paragraph "64" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

65. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

66. Paragraph "66" of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

67. Defendants deny each and every allegation of fact set forth in paragraph “67” of the Complaint.

68. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

69. Defendants deny each and every allegation of fact set forth in paragraph “69” of the Complaint.

70. Defendants deny each and every allegation of fact set forth in paragraph “70” of the Complaint.

71. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint

72. Defendants deny each and every allegation of fact set forth in paragraph “72” of the Complaint.

73. Defendants deny each and every allegation of fact set forth in paragraph “73” of the Complaint.

74. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “74” of the Complaint are not consistent with its actual content, such allegations are denied.

75. Defendants admits the fact set forth in paragraph “75” of the Complaint.

76. Defendants deny each and every allegation set forth in paragraph “76” of the Complaint.

77. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph "77" of the Complaint are not consistent with its actual content, such allegations are denied.

78. Defendants deny each and every allegation set forth in paragraph "78" of the Complaint.

79. Defendants deny each and every allegation set forth in paragraph "79" of the Complaint.

80. Defendants deny each and every allegation set forth in paragraph "80" of the Complaint.

81. Defendants deny each and every allegation set forth in paragraph "81" of the Complaint.

82. Defendants deny each and every allegation set forth in paragraph "82" of the Complaint.

83. Defendants deny each and every allegation set forth in paragraph "83" of the Complaint.

84. Defendants deny each and every allegation set forth in paragraph "84" of the Complaint.

85. Defendants deny each and every allegation set forth in paragraph "85" of the Complaint.

86. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

87. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “87” of the Complaint are not consistent with its actual content, such allegations are denied.

88. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “88” of the Complaint are not consistent with its actual content, such allegations are denied.

89. The License Agreement is a document that speaks for itself and should be referred to for the accuracy of its contents, and to the extent that any allegations regarding the content of this document in paragraph “89” of the Complaint are not consistent with its actual content, such allegations are denied.

90. Defendants deny each and every allegation set forth in paragraph “90” of the Complaint.

91. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

92. Paragraph “92” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

93. Defendants deny each and every allegation set forth in paragraph “93” of the Complaint.

94. Defendants deny each and every allegation set forth in paragraph “94” of the Complaint.

95. Paragraph “95” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants.

96. Defendants incorporate herein by reference all of their responses to the preceding paragraphs of the Complaint.

97. Defendants deny each and every allegation set forth in paragraph “97” of the Complaint.

98. Paragraph “98” of the Complaint contains a legal conclusion for which no response is required and to which Defendants otherwise deny insofar as the same purports to provide a basis for a finding of liability as against Defendants

## Response to Prayer for Relief

**WHEREFORE**, Defendants deny that Plaintiff is entitled to any of the relief set forth or sought in Plaintiff’s prayer for relief, whatsoever.

**AFFIRMATIVE DEFENSES**

Further answering the Complaint, Defendants pleads the following affirmative defenses:

FIRST AFFIRMATIVE DEFENSE

A. The Complaint, and each and every cause of action contained therein, fails to state facts and claims sufficient to constitute any cause of action upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

B. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver. Defendant alleges that Plaintiff agreed to release and waived some or all its rights to some or all of the claims asserted in the Complaint by virtue of Plaintiff's actions, behavior, representations and statements after the alleged date of termination.

THIRD AFFIRMATIVE DEFENSE

C. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands. Plaintiff should be barred from recovering against Defendant due Plaintiff's by virtue of its actions, behavior, representations and statements after the alleged date of termination and its own careless, negligent or other wrongful or harmful conduct in connection with Plaintiff's claims.

FOURTH AFFIRMATIVE DEFENSE

D. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches by virtue of its actions, behavior, representations and statements after the alleged date of termination and due to the Plaintiff waiting an unreasonable amount of time before bringing its alleged claims, if any, against Defendants.

FIFTH AFFIRMATIVE DEFENSE

E. Plaintiff's claims are barred, in whole or in part, by the doctrine of impossibility. Due to

unforeseen events, through no fault of the Defendants, the obligations or acts set forth in the Complaint were rendered impossible, of which the Plaintiff was well aware before and after the alleged date of breach thus barring the Plaintiff from recovering on all or some of the claims set forth.

SIXTH AFFIRMATIVE DEFENSE

F. Plaintiff's claims are barred, in whole or in part, by acts of god. The damages complained of in Plaintiff's Company resulted from an unforeseeable act of God, thereby barring either partially or totally, Plaintiff's claimed damages.

SEVENTH AFFIRMATIVE DEFENSE

G. Plaintiff's claims are barred, in whole or in part, by the doctrine of frustration of purpose. The claims in Plaintiff's Complaint fail to point out that the principal purpose of the License Agreement, has been so substantially affected by the restrictions placed on the Channels of Distribution that the License Agreement was impracticable to perform as contracted for.

**Counterclaim-Plaintiff's Counterclaims**

**Counterstatement of Facts**

1. In 2013, Counter-Plaintiff American Exchange Time LLC ("Counter-Plaintiff") entered into a License Agreement, which was then assigned to Counter-Defendant BR Brand Holdings, LLC ("Counter-Defendant") in October 2019.

2. As set forth in the License Agreement, in consideration for the license to sell goods into the bargained for Channels of Distribution, Counter-Plaintiff was to pay Counter-Defendant a structured Guaranteed Minimum Royalty Payment ("GMR") based upon the sales made by Counter-Plaintiff in an open market through the Channels of Distribution, namely Department

Stores; e.g. Macy's, Dillards, Nordstrom and the international equivalent of the foregoing; Better Off-Price Retailers: e.g. Nordstrom Rack, Saks Off 5th, Neiman Marcus Last Call and the international equivalent of the foregoing, Off-Price Retailers: e.g Burlington, Marmaxx, Ross, Loehmans, Tuesday Morning, Century and the international equivalent of the foregoing.

3. The GMR was negotiated on the basis of such Channels of Distribution being open and operating in regular market conditions, and a figure was arrived at based upon projections of sales.

4. Counter-Plaintiff was current in their account, paying each and every GMR due and owing to Counter-Defendant, in full.

5. Unfortunately, in March 2020, the COVID-19 pandemic reached New York, after impacting Europe and Asia since January 2020.

6. The COVID-19 pandemic crippled the sales market, both nationwide and worldwide.

7. In the vast majority of states various lockdowns imposed and health guidelines completely shuttered the Channels of Distribution, due to the fact that customers were precluded from entering the retailers, physically.

8. As a consequence, those retailers within the Channels of Distribution stopped or severely limited purchasing from March 2020 thereon.

9. The bargained for ability to sell into the Channels of Distribution is the very essence of the License Agreement.

10. From March 2020, until the date of this Answer and Counter-Complaint, the sales market in the United States has steadily declined and not yet returned to its former glory.

11. On March 9, 2020, as the pandemic was settling in, in the full knowledge that the Channels of Distribution were likely to be closed and severely impacted over the coming quarter, Counter-Defendant nevertheless issued an invoice for quarterly GMR payment.

12. On March 24, 2020, while the COVID-19 pandemic was at its initial height and the markets were closed, Counter-Defendant alerted Counter-Plaintiff that the deadline for payment was approaching, in the full knowledge that the Channels of Distribution were closed and severely impacted.

13. With knowledge that the purpose of the License Agreement was being frustrated or impossible, Counter-Defendant, continued to harass the Counter-Plaintiff in the midst of a national crisis regarding payment of the GMR.

14. Counter-Plaintiff took reasonable time to respond to Counter-Defendant's demands as

Counter-Plaintiff tried to keep the long-standing business from failing, as due to frustration of purpose and impossibility it was unable to sell the requisite amount of products to the Channels of Distribution.

15. On May 7, 2020, Counter-Plaintiff responded to Counter-defendant, acknowledging the fact that that Counter- Plaintiff gave notice under the License Agreement that due to the COVID-19 shutdown and that all business partners of Counter-Plaintiff were being notified of a 90-day delay in royalty payments and, payments on the March 9, 2020 invoice were intended to be delivered to Counter-Defendant in in July 2020.

16. At no time, has Counter-Plaintiff failed to inform the Counter-Defendant of the level of actual sales made.

17. Despite having knowledge that the purpose of the License Agreement was being frustrated and being rendered impossible as the Channels of Distribution were closed and severely impacted, Counter-Defendant the situation and pandemic, demanded payment of Ten Thousand Dollars ($10,000) by Monday May 11, 2020 on the Eighteen Thousand Seven Hundred Fifty Dollar ($18,750) March 9, 2020 invoice.

18. Stunned at Counter-Defendant's response, Counter-Plaintiff sought a phone call between the Parties.

19. On May 15, 2020 seemingly the Parties had a productive call as to the GMR payments, where impact on the Channels of Distribution was discussed and Counter-Defendant offered Counter-Plaintiff to pay half the amount of the March 9, 2020 invoice upfront and the remaining half a month later.

20. Unfortunately, with the pandemic further amplifying and markets still closed, frustrating the purpose of the License Agreement and continuing to render the agreement impossible, Counter-Plaintiff, after an in-depth review of its finances determined upon on sales data was unable to complete the half upfront, half delay requested by Counter-Defendant.

21. In good faith, and in wanting to fulfill their GMR provision , Counter-Plaintiff on May 21 2020 offered the following proposal: (1) a partial payment of $9,375 (half of Q2 royalties, immediately; (2) the remainder of the Q2 royalties (S9,375) paid June 30; (3) Q3 royalty payment abated; (4) Q4 royalty payment paid in full on December 31, 2020 and; (5) the Minimum Guaranteed Royalty lowered from $75,000 to earned royalties on sales only for 2021, due to the pandemic impacting sales.

22. In keeping with its duty of good faith and fair dealing , the Counter-Plaintiff made clear that while this was not its intention, the only other foreseeable option would be to terminate the License in full and work together with the Counter-Defendant to wind down by the end of the year.

23. In breach of its duties of good faith and fair dealing, Counter-Defendant immediately rejected Counter-Plaintiff's proposal demanding (1) A split of the March 9, 2020 invoice in half with half paid immediately and half paid on June 30, 2021; (2) delay the Q1 payment of $18,750 to July 1, 2020 and every further payment would remain the same for the Term of the License Agreement.

24. On June 11, 2020, with the full knowledge that for three (3) months, the purpose of the License Agreement had been frustrated and the agreement itself been rendered impossible, Counter-Defendant sent a Default Notice to Counter-Plaintiff.

25. The Default Notice demanded not simply payment of royalties but also accelerated future Guaranteed Minimum Royalties.

26. In each and every contract exists a duty of good faith and fair dealing.

27. The Counter-Plaintiff by demanding monies where performance of an agreement had been rendered impossible by an act of God, is unconscionable.

28. The Counter-Plaintiff by demanding accelerated payments, where performance of an agreement had been rendered impossible by an act of God, is even more unconscionable.

29. The Counter-Plaintiff by demanding payments, where performance of an agreement had been rendered impossible by an act of God, were not made in good faith.

30. Upon information and belief, the Counter-Plaintiff's have not made similar demands upon their other licensees including but not limited to TKO Evolution, Amrapur Overseas, Zimco Optics Inc., One Step Up, Intimateco LLC, 3B International, Prodigy Brands or New York Accessories Group.

31. The GMR payments bargained for in the License Agreement were based on an open market, the market during the pandemic seemingly evaporated and it was impossible for Counter-Plaintiff to sell its goods in order to reach the GMR payment.

32. To not take into account that the purpose of the Agreement had been frustrated or rendered impossible by an Act of God and to then bring a claim of trademark infringement rises to the level of bad faith on the Counter-Defendant.

33. Upon information and belief, the Counter-Defendant has not been damaged as there were no other licensees to sell into the Channels of Distribution during the pandemic.

34. As such, Counter-Defendant's failure to uphold the duty of good faith and fair dealing implied in the License Agreement, has forced Counter-Plaintiff to be damaged and to defend themselves.

## COUNT I – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

1. Counterclaim Plaintiff re-alleges the paragraphs above as if fully set forth herein.
2. Counterclaim Plaintiff contracted with Counterclaim Defendant to use the Licensed Mark in connection with products for distribution only to the expressly specified retailers within the Channels of Distribution set forth on Schedule l to the License Agreement.
3. The Guaranteed Minimum Royalty and Minimum Net Sales were negotiated and agreed on the basis of regular, unhindered market forces.

4. This License Agreement was subject to an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenant that Counterclaim-Defendant would act fairly and in good faith in the event that the contracted for Channels of Distribution were impaired.

5. The implied covenant of good faith and fair dealing does not override and supersede the express terms contracted for in the License Agreement, rather is a supplemental implied term added into the License Agreement.

6. Counterclaim-Defendant breached the implied covenant of good faith and fair dealing by:

i) Refusing to recognize the unforeseen events and/or act of god circumstances brought on by the COVID-19 pandemic;

ii) Refusing to recognize that the Channels of Distribution were significantly impaired by the COVID-19 pandemic;

iii) Enforcing the Minimum Net Sales despite the impossibility brought on by the COVID-19 pandemic;

iv) Enforcing the Minimum Net Sales despite the frustration of purpose caused by the COVID-19 pandemic;

v) Enforcing the Guaranteed Minimum Royalty despite the impossibility brought on by the COVID-19 pandemic;

vi) Accelerating Guaranteed Minimum Royalty despite the impossibility brought on by the COVID-19 pandemic;

vii) Enforcing the Guaranteed Minimum Royalty despite the frustration of purpose caused by the COVID-19 pandemic;

viii) Accelerating Guaranteed Minimum Royalty despite the frustration of purpose brought on by the COVID-19 pandemic;

ix) Cancellation of the License Agreement; or

x) Bringing the Complaint, in bad faith.

7. In addition to the above, Counterclaim-Defendant breached the implied covenant of good faith and fair dealing by attempting to strong arm the Defendant during the COVID-19 pandemic

8. Counterclaim-Plaintiff met all or substantially all of its contractual obligations up until rendered unable to by unforeseen circumstances beyond its control.

9. Counterclaim-Defendant's failure to act in good faith in demanding Guaranteed Minimum Royalty payments from Channels of Distribution that were severely impaired by the COVID 19 pandemic denied Plaintiff the full benefit of its bargain.

10. Accordingly, Plaintiff has been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and is entitled to damages in an amount to be proven at trial.

**WHEREFORE**, Defendants prays for Judgment as follows:

a. dismissing the Complaint in its entirety, as against Defendants, with prejudice;

b. awarding Defendants its costs, expenses, and reasonable attorneys' fees, including as prevailing parties under 17 U.S.C. § 505; and

c. granting Defendants such other and further relief at this Court deems just and proper.

**DATED:** NEW YORK, NEW YORK
FEBRUARY 19, 2021

RESPECTFULLY SUBMITTED,

**GARSON, SEGAL,**
**STEINMETZ, FLADGATE LLP**

**BY:** /s/

ROBERT GARSON
MORGAN ROMAGNA
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
**TELEPHONE:** (212) 380-3623
**FACSIMILE:** (347) 537-4540
**EMAIL:** RG@gs2law.com
MDR@gs2law.com

*ATTORNEYS FOR DEFENDANTS*